1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAEDAE, INC. d/b/a GIMBAL, GIMBAL, INC., | Case No.:  3:23-cv-00335-L-DEB |
| Plaintiffs, | **ORDER DENYING MOTION TO DISMISS** |
| v. | |
| CUEBIQ, INC., | **[ECF No. 21]** |
| Defendant. | |

Pending before the court in this trade secret and breach of contract action is Defendant Cuebiq, Inc.'s ("Cuebiq" or "Defendant") motion to dismiss the complaint for failure to state a claim.  (ECF No. 21.)  Plaintiffs PaeDae Inc. d/b/a Gimbal ("PaeDae") and Gimbal, Inc. (collectively, "Plaintiffs" or "Gimbal") opposed, (ECF No. 22), and Cuebiq replied, (ECF No. 23).  The Court decides the matters on the papers submitted and without oral argument. *See* Civ. L. R. 7.1(d.1).  For the reasons stated below, the motion to dismiss is DENIED.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      BACKGROUND[1]

Plaintiffs brought this trade secret and breach of contract action against Cuebiq for the alleged breach of contract and theft of trade secrets.  On or about March 26, 2014, Beintoo, Inc. ("Beintoo") entered into the "Gimbal Developer Agreement" with Gimbal, Inc.  (ECF No. 1 at 4.)  Gimbal, Inc. was originally a subsidiary of Qualcomm Inc. that was spun off as a standalone company. (*Id*. at 3.)  The business model of Gimbal, Inc., is to build location intelligence IP, software, tools, and other technologies, which collectively constitute the "Gimbal Technology," which Gimbal, Inc. then licenses to other companies. (*Id*.)  Under the Gimbal Developer Agreement, as relevant here, Gimbal, Inc. permitted Beintoo to use Gimbal Technology and would be obligated to pay a service fee of $0.04 to $0.06 per monthly active user.  (*Id*. at 6.)  Also under the Gimbal Developer Agreement, Beintoo agreed that it "shall not, and shall ensure that [Beintoo's] Contractors do not reproduce, distribute, publicly perform, publicly display or create derivative works of or based on the Software, or disclose, rent, lease, loan, provide or otherwise transfer, in any manner, to any third party the Software, Documentation or any portion thereof." (*Id*. at 5.)  Plaintiffs allege that the Gimbal Developer Agreement is still in effect. (*Id*. at 7.)

Further, Gimbal, Inc. and Beintoo entered into two additional agreements: the "Amendment to Gimbal Developer Agreement," on March 26, 2014, which required Beintoo to pay Gimbal Public Network fees of $0.50 per thousand visits after a three-month free trial term, and the "Addendum to Gimbal and Beintoo Amendment" on September 19, 2014, which established an "Advertising SDK Pilot" that uses Gimbal Technology to allow Beintoo to deliver "retailer's and brand's targeted content, offers and advertisements." (*Id*. at 7.)

---

[1] Unless otherwise noted, all facts are taken from the complaint. On a motion to dismiss for failure to state a claim, all allegations of "material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996); *see also Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

3:23-cv-00335-L-DEB

1    Beintoo requested to use Gimbal Technology in an application called

2  "BeAudience." (*Id*. at 8.)  Beintoo publicly launched BeAudience in November 2014

3  using Gimbal Technology.  (*Id*.)  Beintoo's CEO was quoted saying that "[i]ncorporating

4  the Gimbal platform into the mobile BeAudience platform offers brands and retailers the

5  perfect opportunity to engage consumers with relevant advertising content that matches

6  their real shopping intent when and where it matters to them."  (*Id*. at 8-9.)  Gimbal

7  alleges that "[d]espite launching and marketing the BeAudience product, which

8  'incorporat[ed] the Gimbal platform,' Beintoo's CEO told Gimbal that "there was no

9  commercial launch" when asked why Beintoo never paid Gimbal any licensing fees."

10  (*Id*. at 10.)  Plaintiffs allege this statement was false, and that "Beintoo's

11  misrepresentations and concealment of facts prevented Gimbal from discovering that

12  Beintoo did in fact have a 'commercial launch' as early as Q3 2015, which would have

13  required payment of licensing fees under the License Agreement."  (*Id*.)

14    On or about February 18, 2016, Beintoo announced that it "launched" Cuebiq,

15  which was "a next generation business intelligence (BI) company that helps businesses

16  understand consumers' offline behavior and purchase intent."  (*Id*. at 10.)  Beintoo's CEO

17  was appointed the CEO of the newly formed Cuebiq.  (*Id*.)  The announcement also

18  introduced the product "AudienceQ, which collects smart data from users to create

19  audience segments."  (*Id*. at 11.)  AudienceQ was the "Cuebiq branded version of the

20  BeAudience technology."  (*Id*.)  On or around June 30, 2016, a Gimbal Vice President

21  and a Senior Director of Business Development approached the CEO of Cuebiq and

22  asked him whether Cuebiq was using the Gimbal Technology under the terms of the

23  parties' agreements or otherwise, to which the Cuebiq CEO assured them they were not.

24  (*Id*.)  This is alleged to be false.  (*Id*.)

25    On November 29, 2016, PaeDae, Inc. acquired Gimbal, Inc., which remains its

26  wholly owned subsidiary.  (*Id*.)  PaeDae, Inc. began doing business as "Gimbal."  (*Id*.)

27  Gimbal, Inc.'s executives told PaeDae of the Beintoo and Cuebiq CEO's statements that

28

3:23-cv-00335-L-DEB

1  Beintoo did not commercially launch its product and that Cubeiq was not using the

2  Gimbal Technology when asked about Cuebiq.  (*Id.*)

3       On October 11, 2020, Cuebiq's CEO participated in a call with PaeDae's then-

4  CEO and Head of Corporate Development regarding the potential sale of part of Cuebiq's

5  business named "Clara" that was serving adtech customers with audience and

6  measurement products, including the AudienceQ and VitisQ products.  (*Id.*)  Both of the

7  AudienceQ and VitisQ products are alleged to use Gimbal Technology, which Plaintiffs

8  discovered when given access to a "data room" in connection with doing due diligence on

9  the potential Clara sale.  (*Id*. at 12.)  Plaintiffs allege that they "learned that Cuebiq had

10  used the Gimbal Technology or derivatives of the Gimbal Technology in creating the

11  Clara technology that it was now offering to sell to PaeDae."  (*Id.*)  Further, Plaintiffs

12  allege that "[d]uring the course of its diligence on Cuebiq and the Clara technology,

13  PaeDae discovered that Cuebiq was not in fact a spinout of Beintoo, but was actually the

14  same company."  (*Id.*)  Plaintiffs allege they brought these concerns to Cuebiq, whom

15  they previously had a good relationship with, but "[i]nstead of addressing the concerns,

16  Cuebiq's CEO denied that Beintoo and Cuebiq had any relationship and claimed that any

17  … breach [or] misappropriation was not the responsibility of Cuebiq but of Beintoo, a

18  purportedly separate company based in Italy."  (*Id.*)

19       Plaintiffs now bring claims for violations of the Defend Trade Secrets Act, 18

20  U.S.C § 1836 ("DTSA"); the California Uniform Trade Secrets Act, Cal. Civ. Code §

21  3426 *et seq*. ("CUTSA"); trade secret misappropriation under New York common law;

22  breach of contract; and fraud.  (*Id*. at 19-25.)

23  **II.    LEGAL STANDARD**

24       A 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v.*

25  *Block*, 250 F.3d 729, 732 (9th Cir. 2001). [2]  A pleading must contain, in part, "a short and

26

27

28  ---
    [2]  Unless stated otherwise, internal ellipses, brackets, citations, and quotation marks are omitted from
    citations.

1 plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

2 8(a)(2). Therefore, plaintiffs must also plead "enough facts to state a claim to relief that

3 is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also*

4 Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than "a formulaic

5 recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further

6 factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

7 550 U.S. at 557). Instead, the complaint "must contain allegations of underlying facts

8 sufficient to give fair notice and to enable the opposing party to defend itself effectively."

9 *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

10        In reviewing a 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are

11 taken as true and construed in the light most favorable to the nonmoving party." *Cahill v.*

12 *Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, a court need not

13 take legal conclusions as true merely because they are cast in the form of factual

14 allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly,

15 "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a

16 motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

17    **III.   DISCUSSION**

18        Cuebiq moves to dismiss all causes of action against it. First, they argue that the

19 breach of contract cause of action should be dismissed as all relevant contracts were

20 between Gimbal and Beintoo, a separate entity. Second, Cuebiq argues that all causes of

21 action against it should be dismissed as the statutes of limitation have lapsed for each

22 one. Each of these arguments is taken in turn.

23        **a.  Whether Cuebiq Is Beintoo**

24        Cuebiq moves to dismiss the breach of contract cause of action arguing that as the

25 relevant contracts[3] were made between Beintoo and Gimbal (and Gimbal's predecessor

26

27 —————————————————

28 [3] The Gimbal Developer Agreement chooses California law as the governing law. (*See* ECF No 21-1 at 26 (Tomarchio Decl., Exh. 1, Section 15)) ("This Agreement is governed and interpreted in accordance

1  Qualcomm).  (ECF No. 21 at 17.)   Plaintiffs counter that their allegation that "Cuebiq

2  and Beintoo are not separate entities, but instead are entangled to the extent that there is

3  no separateness between the two" is sufficient.  (ECF No. 22 at 8.)

4        Plaintiffs point to the following to show that "Cuebiq Is Beintoo."  First, they

5  allege that Cuebiq was not independently started, but rather was "launched" by Beintoo

6  on or about February 18, 2016.  (ECF No. 1 at 10-11.)  Second, Beintoo's CEO at the

7  time was also appointed as CEO of Cuebiq.  (*Id.*)  Third, in 2021 the former CTO of

8  Beintoo described himself on his LinkedIn profile as a Founder and CTO of Beintoo from

9  September to March 2020 and a Founder and Chief Intelligence Officer of Cuebiq from

10 November 2016 to the present.  (*Id.* at 13.)  Plaintiffs argue that sum of these allegations

11 "establish that Beintoo and Cuebiq did not in fact behave or operate in a manner that

12 indicates they are separate entities. Rather, both companies have shared leadership,

13 investors, and technology, with nothing but Cuebiq's bare, and often contradictory,

14 assertions that they are separate companies."  (ECF No. 22 at 8.)

15       Plaintiffs cite *Greenspan v. LADT, LLC* to support their argument. 191 Cal. App.

16 4th 486 (2010).  In *Greenspan*, the court held that "it would be unjust to permit those

17 who control companies to treat them as a single or unitary enterprise and then assert their

18 corporate separateness in order to commit frauds and other misdeeds with impunity . . . "

19 *Id*. at 512.  In *Greenspan*, the court considered whether assets of one company could be

20 used to satisfy the debts of another when the same owners held both and operated both as

21 a single enterprise.  *Id*.  Here, while Cuebiq was "launched" by Beintoo and had, at least

22

23

24 with the laws of the state of California, United States of America, without giving effect to its conflict of
   laws provisions that would result in the application of the laws of a different state or country.")  As

25 federal courts must apply the choice-of-law rules prevailing in the state where they are located, this
   Court applies California's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496

26 (1941). California courts generally enforce choice-of-law provisions unless the chosen state has no
   substantial relationship to the parties or the transaction, and the chosen state's law is contrary to

27 California's fundamental public policy. *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal.4th 459, 464-65
   (1992). The parties do not point to any violation of public policy in applying California law.  Therefore,

28 the Court applies California law to the breach of contract claim.

1   for some period of a time, overlapping officers, Plaintiffs do not plausibly allege that they

2   were run as a single enterprise or for the purpose to committing fraud.  Accordingly,

3   Plaintiffs fail to allege that "Cuebiq is Beintoo" for purposes of holding Cuebiq to

4   contracts entered by Beintoo.

5                  **b.  Successor Liability**

6          Gimbal alternatively argues that Cuebiq is subject to successor liability from

7   Beintoo and therefore can be held to Beintoo's contracts.

8          As a threshold issue, Cuebiq argues that Gimbal's successor liability theory is not

9   pled in the complaint and therefore should not be considered.  Gimbal argues that they

10  are not "required to use the exact words" of "successor liability" to establish their claims

11  when it is clear that "Gimbal is alleging that Cuebiq should be liable for the License

12  Agreement."  (ECF No. 22 at 13.)  While it is true Gimbal never explicitly pleads the

13  theory that Cuebiq has successor liability flowing from Beintoo, the Federal Rules of

14  Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of

15  the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S.

16  10, 11 (2014).  Indeed, notice pleading requires only the pleading of facts, not legal

17  theories.  *Starr v. Baca*, 652 F.3d at 1212; *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir.

18  2008).  Accordingly, Gimbal may argue that they have alleged successor liability as the

19  legal theory for which they seek to hold Cuebiq responsible for Beintoo's contact.

20         Under California law, a corporation purchasing the principal assets of another

21  corporation does not assume the seller's liabilities "unless (1) there is an express or

22  implied agreement of assumption, (2) the transaction amounts to a consolidation or

23  merger of the two corporations, (3) the purchasing corporation is a mere continuation of

24  the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of

25  escaping liability for the seller's debts." *Ray v. Alad Corp.*, 19 Cal.3d 22, 28 (1977).

26  Furthermore, "the liberal requirements of Rule 8(a)(2) apply to ... successor-in-interest

27  allegations...." *Pac. Rollforming, LLC v. Trakloc Int'l, LLC*, No. 07–CV–1897, 2008 WL

28  4183916, at *3 (S.D. Cal. Sept. 8, 2008).

1    Gimbal argues that Cuebiq is a mere continuation of Beintoo.  To allege this, one

2 or both of the following must be shown: "(1) no adequate consideration was given for the

3 predecessor corporation's assets and made available for meeting the claims of its

4 unsecured creditors; [or] (2) one or more persons were officers, directors, or stockholders

5 of both corporations." *Ray*, 19 Cal.3d at 29.

6    To support their contention that Cuebiq is a mere continuation of Beintoo, Gimbal

7 offers the following.  Gimbal alleges that Beintoo "launched" Cuebiq on or about

8 February 18, 2016, and that Cuebiq's CEO said that "Cuebiq was born out of my

9 previous company Beintoo."  (ECF No. 1 at 10, 14.)  Gimbal alleged that the "demerger"

10 was not completed until August 2016, "indicating that it utilized Beintoo resources at

11 least until the companies were supposedly separated."  (ECF No 22 at 10.)  Further,

12 Gimbal alleged that by Cuebiq's CEO own account, "the two companies had the same

13 captable[4], because that's how you do this kind of demergers to avoid issues with

14 shareholders."  (*Id.*)

15    Gimbal also alleges that the two companies shared officers, directors, or

16 shareholders.  First, as mentioned above, the two companies are alleged to share the same

17 "captable," which indicates that the shareholders of the two companies are the same.

18 (*Id.*) Second, Beintoo's CEO at the time was also appointed as CEO of Cuebiq.  (*Id.* at

19 10-11)  Third, in 2021, the former CTO of Beintoo described himself on his LinkedIn

20 profile as the Founder and CTO of Beintoo from September to March 2020 and the

21 Founder and Chief Intelligence Officer of Cuebiq from November 2016 to the present.

22 (*Id.* at 13.)

23    Gimbal's allegations are sufficient to allege that Cuebiq is a successor to Beintoo

24 such that it can be held to Beintoo's contracts.  Gimbal plausibly alleged that Beintoo

25

26

27 [4] From context, it appears that the CEO of Cuebiq was saying that the "cap table," short for "capitalization table," was the same.  A capitalization table "is a spreadsheet or table that shows the
28 equity capitalization for a company." *See* Julie Young, *Capitalization (Cap) Table: What It Is, Creating/Maintaining One* (2022), https://www.investopedia.com/terms/c/capitalization-table.asp.

8

1   spun off Cuebiq, that Cuebiq had the same shareholders, officers, and directors, and that

2   the two companies shared assets without consideration.  Accordingly, Cuebiq's motion to

3   dismiss the breach of contract claim on the grounds that it cannot be held to Beintoo's

4   contracts is DENIED.

5   ### c.  Statute of Limitations

6   Cuebiq argues that each of Gimbal's claims is barred by the relevant statute of

7   limitations.  Statute of limitations may be raised on a motion to dismiss where the

8   running of the statute is apparent on the face of the complaint.  *Huynh v. Chase*

9   *Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) ("Accepting as true the allegations in

10  the complaint, as we must when reviewing a motion to dismiss under Federal Rule of

11  Civil Procedure 12(b)(6), we must determine whether the running of the statute is

12  apparent on the face of the complaint.")  The DTSA, CUTSA, and New York common

13  law trade secret claims are subject to a three-year statute of limitations.  18 U.S.C.

14  §1836(d) (DTSA); Cal. Code of Civ. P. § 3426.6 (CUTSA); *Cont'l Indus. Grp., Inc. v.*

15  *Ustuntas*, 181 N.Y.S.3d 527, 530 (2022) (New York common law).  The fraud cause of

16  action is subject to a three-year statute of limitations.[5]  Cal. Code of Civ. P. § 338(d).

17  The breach of contract cause of action is subject to a four-year statute of limitations. Cal.

18  Code of Civ. P. § 338(d).  The parties entered into the Standstill and Tolling Agreement

19  on April 18, 2022, to engage in confidential mediation discussions. They agreed that any

20  future action against Cuebiq for misappropriation of trade secrets, breach of contract, or

21  related claims, would have an effective filing date of April 18, 2022. April 22, 2018, is

22  thus four years (the longest applicable statute of limitations) before this date.

23

24

25

26

27

28   [5] Without explaining, both parties apply California law in arguing about the fraud statute of limitation. Accordingly, this Court applies the California statute of limitations,

1

**i.  Wrongful Conduct Occurred Outside the Statute of**

2

**Limitations Period**

3      Cuebiq points to a number of specific instances of alleged wrongful conduct that

4   occurred before April 22, 2018.  First, on February 27, 2015, Beintoo announced its

5   BeAudience product, which it described as "a platform that gathers location data directly

6   from users' devices via a simple SDK, and is compatible with any proximity solution

7   provider to capture signals from beacons in its network. The solution can then analyze the

8   historical location patterns of anonymized app users who have opted in through

9   BeAudience-powered mobile apps and segment them accordingly."  (ECF No. 1 at 9.)

10  This product is alleged to match the technology Beintoo licensed from Gimbal.  (*Id*. at

11  10.)

12      Second, on September 14, 2015, Beintoo was alleged to have posted a video on its

13  YouTube channel describing BeAudience as a "geo-behavioral data" product that

14  "enables relevant, personalized marketing based on the points of interest where users

15  actually spend time in the physical world."  (*Id*.)  Beintoo never paid Gimbal licensing

16  fees, telling Gimbal that "there was no commercial launch," which Plaintiffs argue

17  "based on recently uncovered evidence" was false.  (*Id*.)

18      Third, on or about February 18, 2016, Beintoo announced that it "launched"

19  Cuebiq, "a next generation business intelligence (BI) company that helps businesses

20  understand consumers' offline behavior and purchase intent."  (*Id*. at 10-11.)  Gimbal

21  alleges that AudienceQ, a product launched as part of Cuebiq's suite of products, "would

22  have been the Cuebiq branded version of the BeAudience technology."  (*Id*.)

23      Cuebiq claims that these allegations of wrongdoing form the basis for Gimbal's

24  claims and occur outside of applicable statutes of limitations.  (ECF No. 21 at 22.)

25  Further, they argue that Gimbal should have been on notice based on the publicly

26  available information and that, therefore, the statutes of limitations would begin to run

27  when these events occurred.  (*Id*.)  Plaintiffs do not dispute that wrongdoing occurred

28  outside the statute of limitations, but instead argue that under the discovery rule, the

1   statutes of limitations did not begin to accrue until later because of the "non-public nature

2   of Cuebiq's technology, paired with the purposeful misrepresentations made by Cuebiq's

3   representatives to Gimbal." (ECF No. 22 at 16.)  Because the alleged wrongful conduct

4   occurs outside the statute of limitations period, the running of the statute is therefore on

5   the face of the complaint. *See Huynh*, 465 F.3d at 997. Accordingly, the Court will

6   consider if the action is timely under the discovery rule.

### ii.   Discovery Rule

8        "[T]he discovery rule postpones accrual of a claim until 'the plaintiff discovers, or

9   has reason to discover, the cause of action.'" *Clemens v. DaimlerChrysler Corp.*, 534

10   F.3d 1017, 1024 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 391

11   (1999)). The discovery rule applies "to breaches which can be, and are, committed in

12   secret and moreover, where the harm flowing from those breaches will not be reasonably

13   discoverable by plaintiffs until a future time." *El Pollo Loco, Inc. v. Hashim*, 316 F.3d

14   1032, 1039 (9th Cir. 2003).

15        In order to rely on the discovery rule a plaintiff must allege "(1) the time and

16   manner of discovery *and* (2) the inability to have made earlier discovery despite

17   reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)

18   (emphasis original). A plaintiff who suspects a wrongfully caused injury and wishes to

19   rely on the discovery rule "must conduct a reasonable investigation of all potential causes

20   of that injury." *Id*.

### A. Breach of Contract

22        Cuebiq argues that the discovery rule did not delay accrual for the breach of

23   contract claim because, on the face of Gimbal's own allegations, Plaintiffs should have

24   reasonably known a contract existed.  Cuebiq points to Plaintiffs' allegations that during

25   "the course of its diligence on Cuebiq and the Clara technology [which occurred in

26   2021], PaeDae discovered the still-in-force Licensing Agreement between Gimbal and

27   Beintoo." (ECF No. 1 at 12.)

28

1    The Court disagrees. Cuebiq's argument is based on a misunderstanding of
2    Gimbal's tolling theory. Gimbal is not arguing that their discovery of the licensing
3    agreement is why the discovery rule should apply. Gimbal argues that their delayed
4    discovery of Cuebiq's use of Gimbal's Technology is what tolls the statute of limitations.
5    Cuebiq also argues that the breach of contract claim accrued when Gimbal had
6    reason to suspect alleged breaches of the License Agreement.  Cuebiq argues that as early
7    as February 27, 2015, when Beintoo issued a press release about the BeAudience product,
8    which Gimbal alleges contained Gimbal Technology, Gimbal should have been on notice
9    of the supposed breach of contract.  Furthermore, Beintoo released a YouTube video
10   where the technology described matches Gimbal Technology.  Plaintiffs counter that
11   while they were aware that the BeAudience product appeared to contain their technology,
12   they relied on Beintoo's CEO, who told Gimbal that "there was no commercial launch"
13   when asked why Beintoo never paid Gimbal any licensing fees.  (ECF No. 1 at 10.)
14   Plaintiffs now allege that "based on recently uncovered information, those statements
15   were false."  (*Id.*)  "[T]he recipient of a fraudulent misrepresentation of fact is justified in
16   relying upon its truth, although he might have ascertained the falsity of the representation
17   had he undertaken an investigation." *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040
18   (9th Cir. 2003) (quoting *Storage Servs. v. Oosterbaan*, 214 Cal.App.3d 498, 508 (Cal. Ct.
19   App. 1989)).  Accordingly, Gimbal's allegations of reliance on the assertions of
20   Beintoo's CEO are sufficient to allege the discovery rule applies.

## B. Misappropriation of Trade Secrets and Fraud

22   Cuebiq also argues that the discovery rule does not apply to the three-year statutes
23   of limitations for the trade secret and fraud causes of action. Cuebiq argues that as early
24   as November 12, 2014, when the complaint alleges that Beintoo's CEO issued a public
25   announcement stating that Beintoo was unveiling a new product, BeAudience, Gimbal
26   knew or should have suspected that Beintoo had been improperly accessing or using
27   Gimbal's trade secrets or confidential information.  (ECF No. 21 at 28 (citing ECF No. 1
28   at 8.))  Furthermore, Cuebiq argues that Plaintiffs should have been on notice about the

1   use of Gimbal Technology from the February 27, 2015 press release, discussed above.

2   (*Id.*)  Additionally, Cuebiq argues that upon the announcement of Cuebiq's launch on

3   February 18, 2016, which Plaintiff alleges to be "actually the same company" as Beintoo,

4   they should have been on further notice of possible use of Gimbal Technology.  (*Id.*)

5          Plaintiffs counter that Gimbal acted diligently by approaching Cuebiq on multiple

6   occasions to ask if Cuebiq was using Gimbal's technology.  (ECF No. 22 at 19.)  Gimbal

7   approached Cuebiq in 2015, 2016, and 2021 about the concerns, and on each occasion

8   was told that Cuebiq (and Beintoo) was not using Gimbal's technology.  (ECF No. 1 at

9   10, 11, 13.)  Cuebiq contends that if Gimbal suspected its trade secrets or confidential

10  information was stolen or being improperly used, "it would have and needed to

11  immediately launch an in-depth investigation and inquiry, as required by the legal

12  standards …, rather than simply take the alleged wrongdoer's word for it."  (ECF No. 21

13  at 24.)

14         Gimbal's allegation that Cuebiq's CEO's repeated misrepresentations and

15  Gimbal's reliance on those misrepresentations prevented Gimbal from determining that

16  their trade secrets were stolen are sufficient for application of the discovery rule. *See El*

17  *Pollo Loco, Inc.*, 316 F.3d at 1040.  Plaintiffs have adequately pled that the discovery rule

18  applies, and the statute of limitation is not exhausted as to the trade secrets and fraud

19  causes of action.

20                    **iii.    Conclusion**

21         The Court finds that Plaintiffs have adequately pled that the discovery rule applies

22  to all causes of action.  Accordingly, Defendant's motion to dismiss based on statutes of

23  limitation is DENIED.[6]

24  / / / / /

25

26  _____

27  [6] As the Court finds that Plaintiffs have adequately pled that the discovery rule applies and so the statute
    of limitations has not expired, the Court need not reach Plaintiffs' argument under the continuing
28  violation doctrine.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated:  March 26, 2024

_____
Hon. M. James Lorenz
United States District Judge

14

3:23-cv-00335-L-DEB